CUMBERLAND, ss.
UNIFIED CRIMINAL DOCKET
Docket No. CR-16-812

| | | |
|---|---|---|
| STATE OF MAINE | ) | |
| | ) | |
| | ) | |
| vs. | ) | ORDER ON MOTION TO SUPPRESS |
| | ) | |
| | ) | |
| TYLER VEILLEUX | ) | |
| | ) | |
| Defendant | ) | |

This matter came before the Court for hearing on Defendant's motion to suppress. Defendant appeared with counsel, Derek Banda, Esq. The two witnesses presented were the arresting officer, Jesse Peasley of the South Portland Police Department, and Dorothy Metivier, the technician who took the blood sample from the Defendant. An hour and 30 minutes in length audio and video recording was presented to the court in compact disc form. Due to time limitations, and with the consent of both counsel for the defendant and the State, the court reviewed the recording outside of the hearing. After consideration of the testimony and evidence presented and arguments of counsel, the motion is GRANTED for the reasons set forth below.

On the evening of November 22, 2015, Defendant was arrested by Officer Jesse Peasley of the South Portland Police Department, who had sufficient probable cause to believe Defendant had, *inter alia*, been operating a motor vehicle under the influence of alcohol. Officer Peasley brought Defendant to Cumberland County Jail, where he planned to have Defendant perform an Intoxilyzer breath test to determine his blood alcohol concentration (BAC).

While observing Defendant for the requisite time period before performing the breath test, Officer Peasley learned that the results of a breath test would not be reliable as Defendant had been bleeding from his nose earlier in the evening. Officer Peasley informed Defendant, "apparently...we can't do [a breath test] because you were bleeding from the nose" (D. Ex. 1, 1:01:50/1:30:00), and radioed for a blood technician

(D. Ex. 1, 1:02:36). Defendant expressed confusion as to why he could not simply perform a breath test (D. Ex. 1, 1:03:08), and inquired as to whether he could forego the blood test by admitting to the offense (D. Ex. 1, 1:02:06). Officer Peasley told Defendant that the blood test was one of the "steps we have to take." (D. Ex. 1, 1:03:52.) Throughout their interactions, Officer Peasley presented himself to Defendant in a friendly and low-key manner.

Officer Peasley did not inform the Defendant of Maine's "implied consent" law, did not inform Defendant he had the right to refuse a blood test, and never pointedly asked Defendant whether he consented to a blood test. Officer Peasley and Ms. Metivier witnessed Defendant sign a form consenting to the blood test. Ms. Metivier testified that while Defendant appeared to be afraid of needles, he never refused the blood draw, and said something to the effect of "let's get this done" before signing the consent form. The consent form Defendant signed contained the statement "Let my signature state I have given consent for these blood samples to be taken." (State's Ex. 1). The State's criminal complaint against Defendant alleges that the results of the blood test showed Defendant had a BAC of 0.15 grams or more per 100 milliliters of blood.

Blood tests, unlike breath tests, implicate significant privacy concerns due to the invasiveness of the procedure, the apprehension it may cause in the person whose blood is drawn, and the fact that a biological sample is left in the government's possession. *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2177-78 (2016); *see also Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 625-26 (1989). As such, a blood test is considered a search under the Fourth Amendment. *See Skinner* at 616-17. In order for blood test results to be admissible as evidence, officers must either obtain a warrant for the blood test or the search must fall within a recognized exception to the warrant requirement. *See Missouri v. McNeely*, 133 S. Ct. 1552, 1556-57 (2013).

A warrantless search is reasonable under the Fourth Amendment when the subject consents to it. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041 (1973). Such consent must be "freely and voluntarily given" and based on "more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968). A subject's consent to a search "need not be express but may be fairly inferred from context." *Birchfield* at 2185.

The Supreme Court held in *Birchfield* that a defendant may not be criminally sanctioned for failure to submit to a warrantless blood test under a state's informed

2

consent statute. 136 S. Ct. 2160, 2185-86 (2016). There, petitioner Beylund submitted to a warrantless blood test after a police officer advised him of the criminal penalties associated with refusing the test, and was subsequently convicted based on the test results. *Id.* at 2186. The Court remanded Beylund's case to determine whether his consent to the warrantless blood test was valid in light of "the partial inaccuracy of the officer's advisory." *Id.* Unlike petitioner Beylund, Defendant's submission to the blood draw was not given after he was advised of an unconstitutional criminal penalty under the State's implied consent statute.

In *U.S. v. Weidul*, the First Circuit affirmed the District Court's grant of defendant's motion to suppress the fruits of a warrantless search when it held that consent to the search was not valid in light of the totality of the circumstances. 325 F.3d 50, 53 (1st Cir. 2003). There, a police officer informed the respondent's girlfriend, "I'm going to look in here," referring to a room in the home, to which she responded, "Okay." *Id.* Among the circumstances the court considered in its analysis were the police officer's "low-key demeanor" and the girlfriend's failure to protest the search. *Id.*

Whether Defendant's consent to the blood draw was freely and voluntarily given, in light of the totality of the circumstances, is the dispositive issue on the motion now before the Court. As in *Weidul*, Officer Peasley exhibited a low-key demeanor, and the subject of the search did not explicitly protest. Like the *Weidul* officer's statement "I'm going to look in here," Officer Peasley referred to the blood test in definite and mandatory terms by saying, "we have to [perform a blood test]." While Officer Peasley did not "claim" to have the "lawful authority" (*Bumper* at 549) to require Defendant to submit to the blood draw, the officer's choice of words gave rise to that implication. Defendant's statement of "let's get this done" to the blood technician before signing the consent form indicates he did not know he had the right to refuse the blood draw. In light of the preceding facts, the Court finds that Defendant's consent to the blood draw was not freely and voluntarily given, and accordingly Defendant's Motion to Suppress the results of the blood test performed on Defendant's blood on the evening of November 22, 2015 pursuant M.R.U. Crim. P. 41A(a)(3) is GRANTED.

3

The Clerk is hereby directed to mail a date-stamped copy of this Order to each counsel of record and note the mailing on the Unified Criminal Docket pursuant to M.R.U. Crim. P. 41A(d).

Dated: August 8, 2016

Jed J. French
Maine District Court Judge